NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                           :
KAREN NITTOLI and HARRY SEALS,             :
                                           :
            Plaintiffs,                    :
                                           :        Civil Action No. 05-cv-4007 (JAG)
            v.                             :
                                           :                **OPINION**
MORRIS COUNTY BOARD OF CHOSEN :
FREEHOLDERS; and in their official and     :
individual capacities, JOSEPH DEVINE;      :
PAUL KALLEBERG; JEFFREY PAUL;              :
and MICHAEL RUBBINACCIO,                   :
                                           :
            Defendants.                    :
_____:


**GREENAWAY, JR., U.S.D.J.**

        This matter comes before this Court on the motions of defendants, Morris County Board

of Chosen Freeholders ("Morris County Freeholders"),[1] Joseph Devine ("Devine") who is the

Chief of Investigators in the Morris County Prosecutor's Office (Compl. ¶ 4), Paul Kalleberg

("Kalleberg") who is a police captain in the Morris County Prosecutor's Office (Compl. ¶ 5),

Jeffrey Paul ("Paul") who is a police lieutenant in the Morris County Prosecutor's Office

(Compl. ¶ 6), and Michael Rubbinaccio ("Rubbinaccio") who is the Morris County Prosecutor

_____

        [1] Neither Karen Nittoli nor Harry Seals implicates the Morris County Freeholders as a defendant in their 42 U.S.C. § 1983 claims; however, their claims against the Morris County Freeholders will be dismissed due to lack of federal question jurisdiction since this Court has an independent obligation to satisfy itself that it has subject matter jurisdiction. See FED. R. CIV. P. 12(h)(3).

(Compl. ¶ 7) (collectively, "Defendants"),[2] to dismiss the complaint of plaintiffs, Karen Nittoli ("Nittoli") and Harry Seals ("Seals") (collectively, "Plaintiffs"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  For the reasons set forth below, this Court concludes that the Plaintiffs have failed to state a claim, pursuant to 42 U.S.C. § 1983, and those claims shall be dismissed.[3]

## BACKGROUND

In the complaint, plaintiff Karen Nittoli, a New Jersey resident, alleges that, beginning in March 2001, she was the Sexual Assault Nurse Examiner (SANE) and Sexual Assault Response Team (SART) Coordinator for the Morris County Prosecutor's Office.  (Compl. ¶¶ 1, 9.) Beginning in May 2001, Nittoli was employed as an independent contractor and "was instrumental in establishing Morris County's SANE/SART program."  (Compl. ¶¶ 1, 9.)

Nittoli alleges that she was terminated from the SART Coordinator position on September 30, 2003, and replaced by Michelle Roers DiNapoli ("DiNapoli").  (Compl ¶ 25.) Nittoli continued to serve as SANE Coordinator until her resignation, which was effective January 1, 2004.  (Compl. ¶ 32.)

Nittoli alleges that her resignation was not voluntary, but rather that she was constructively discharged due to retaliation and a hostile workplace.  (Compl. ¶ 32.)  She alleges that, beginning in 2003 and continuing through July 2004, she was subjected to "disparate

---

[2]   Other than one vague reference to "her chain of command" (Compl. ¶ 19), the complaint does not indicate the roles any of these individuals played in connection with Nittoli's and Seals's employment.  Even the reference to the chain of command fails to define what that structure was.

[3]   The remaining claims in the complaint are based on state law causes of action. This Court shall deny as moot Defendants' motions with respect to those claims.

treatment on the basis of her sex, sexual harassment, a hostile work environment, and retaliation for objecting to discrimination and otherwise asserting her civil rights." (Compl. ¶ 14.) Specifically, she alleges Police Chief Devine "interrogated" her regarding her personal life on June 30, 2003 (Compl. ¶ 15); Captain Kalleberg harassed her by falsely accusing her of misrepresenting her education on her resume (Compl. ¶ 16); and both Kalleberg and Devine told her that she and her nursing staff would not be paid until the paperwork was presented in the proper format (Compl. ¶¶ 18, 21). On Friday, September 5, 2003, at approximately 3:30 p.m., Nittoli informed Lieutenant Paul[4] that she had been subjected to sexual harassment by Kalleberg and Devine. (Compl. ¶ 22.)

Forty-five minutes after Nittoli spoke to Paul, Seals[5] was told by Lieutenant Kevin Loughman that Devine wanted to speak with him on Monday morning. (Comp. ¶ 23.) On Monday, September 8, 2003, Seals was terminated from his position as an agent in the Morris County Prosecutor's Office and escorted out of the building. (Compl. ¶ 24.)[6]

In the complaint, Nittoli and Seals allege multiple counts of discrimination and wrongful termination against defendants Morris County Freeholders, Devine, Kalleberg, Paul, and Rubbinaccio. Plaintiffs also allege that all defendants, other than the Morris County Freeholders,

---

[4] It is unclear from the complaint why Nittoli told Paul of the alleged sexual discrimination and harassment. There is no allegation that Paul was her supervisor, or that he had any control over her, Kalleberg or Devine.

[5] Plaintiff Harry Seals, Nittoli's father, also a New Jersey resident, is a retired Hanover Township police detective  and was employed as an Agent in the Morris County Prosecutor's Office until his termination. (Compl. ¶ 2.)

[6] The remaining specific allegations will be discussed in detail as they become relevant to this Court's analysis.

violated 42 U.S.C. § 1983.[7]  Other than the § 1983 claims, the remaining counts in the complaint are state law causes of action.

All defendants move to dismiss various claims brought by Nittoli and Seals.[8]  Paul and Rubbinacio move to dismiss all counts brought against them, including the § 1983 claims, based upon their theory that the Plaintiffs did not set forth conduct implicating them on an individual level; rather, both of these defendants were agents of the Morris County Prosecutor's Office working in their supervisory positions.  Devine seeks dismissal of all counts applicable to him, except count fifteen, for failure to state a claim.  His motion addresses the § 1983 claims, as well as various state causes of action alleged in the complaint.[9]

The Morris County Freeholders move to dismiss counts one, two, three, four, six, nine,

---

[7]  Nittoli's and Seals's counts are combined in the same complaint for a total of nineteen counts.  The first thirteen counts relate to Nittoli and the remaining counts of the complaint relate to Seals.  The counts specific to Nittoli are: (First Count) hostile work environment based on sex, marital status and familial status, in violation of N.J. STAT. ANN. §§ 10:5-1 to 42, New Jersey Law Against Discrimination (LAD); (Second Count) disparate treatment based upon sex, marital status and familial status, in violation of LAD; (Third Count) failure to contract, in violation of LAD; (Fourth Count) retaliation, in violation of LAD; (Fifth Count) aiding, abetting, inciting, compelling and/or coercing, in violation of LAD; (Sixth Count) fraudulent inducement; (Seventh Count) breach of contract; (Eight Count) breach of good faith and dealing; (Ninth Count) violation of public policy; (Tenth Count) § 1983 violations; (Eleventh Count) intentional infliction of emotional distress; (Twelfth Count) intentional interferences with prospective economic advantages; and (Thirteenth Count) violation of N.J. STAT. ANN. § 34:11-4.1, New Jersey Wage and Hour Law.  The counts specific to Seals are: (Fourteenth Count) retaliation, in violation of LAD; (Fifteenth Count) discrimination based upon age, in violation of LAD; (Sixteenth Count) aiding, abetting, inciting, compelling and/or coercing, in violation LAD; (Seventeenth Count) § 1983 violations; (Eighteenth Count) intentional interference with prospective economic advantage; and (Nineteenth Count) intentional infliction of emotional distress.  Thus, only counts Ten and Seventeen allege federal claims.

[8]  Plaintiffs, in an order dated June 28, 2006, voluntarily dismissed counts three, six, seven, and eight against defendants Devine, Kalleberg, Paul, and Rubbinaccio.

[9]  Kalleberg joins in Devine's motion to dismiss.

4

eleven, twelve, thirteen, fourteen, eighteen and nineteen arguing that Nittoli's status as an independent contractor precludes her from obtaining the relief she seeks.  Plaintiffs did not bring counts five, ten, sixteen, and seventeen against the Morris County Freeholders.

By alleging, pursuant to 42 U.S.C. § 1983, the deprivation of Nittoli's and Seals's constitutionally guaranteed rights to freedom of speech, due process, equal protection, and freedom of association, counts ten and seventeen are the sole basis of federal jurisdiction in this case.  The remaining seventeen counts relate to various state claims.

This Court concludes that Plaintiffs have not alleged sufficient facts to establish a violation of § 1983.  These two claims shall be dismissed. This Court will deny the remaining state law claims as moot.

## DISCUSSION

### A.   Standard of Review Pursuant to FED. R. CIV. P. 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not

accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure: Civil 3d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357.  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Id. (emphasis in original) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Any further expansion beyond the pleadings, however, may require conversion of the motion into one for summary judgment.  FED. R. CIV. P. 12(b).

**B.    Standard of Review Pursuant to 42 U.S.C. § 1983**

By authorizing a person to seek redress for a violation of his federal rights by a person who was acting under color of state law, 42 U.S.C. § 1983 does not create any substantive rights, but rather provides a remedy for the violation of rights created by federal law.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 provides in relevant part that

6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the other party injured in action at law, suit in equity, or other proper proceeding for redress.

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he or she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the challenged conduct was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.J. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).  That is, "[w]hen evaluating a claim brought under § 1983, [the court] must first 'identify the exact contours of the underlying right said to have been violated' in order to determine 'whether [plaintiff] has alleged a deprivation of a constitutional right at all.'"  Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

**C.**   **Analysis**

Plaintiffs Nittoli and Seals brought a total of nineteen counts in their combined complaint.  Only two counts of Plaintiffs' complaint allege a violation of § 1983.  Specifically, Nittoli alleges violations of (1) her First Amendment right of free speech when Defendants allegedly chilled her speech by retaliating against her; (2) her right to equal protection when she was allegedly treated differently from others who were similarly situated; and (3) her due process rights when she was removed from the SART Coordinator position.  Seals claims his First Amendment right to associate freely with Nittoli and his due process rights were violated when he was terminated from his position as an Agent with the Morris County Prosecutor's Office.

7

Neither Nittoli nor Seals set forth sufficient facts to support their claims.

### 1.     Plaintiffs' Claims

### a.     Nitolli's First Amendment Claim

Nittoli claims defendants Devine, Kalleberg, Paul, and Rubbinaccio acted under the color of state law to deny her rights of free speech protected under the First Amendment.[10]  That is, Nittoli claims these defendants chilled her free speech through retaliatory and adverse employment actions.  "Retaliatory or adverse employment action is action that serves to chill or silence public speech."  United States v. Wheeler, 330 F.3d 407, 413 (6th Cir. 2003).

To prevail on a First Amendment claim, "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination."  Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996).[11]  That is, an independent government contractor "must show that the termination of [her] contract was motivated by [her] speech on a matter of public concern."  Id. at 685.  See Connick v. Myers, 461 U.S. 138, 143 (1983).

In the context of an employment case, a public employee must establish that the speech engaged in may be fairly characterized as involving a matter of public concern in order to establish a prima facie First Amendment violation.  See Connick, 461 U.S. at 143.  In Umbehr, this initial step required the plaintiff to prove more than the mere fact that he criticized the Board

---

[10]  The First Amendment provides, inter alia, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend I.

[11]  Although finding that Nittoli fails to satisfy the initial burden required to establish a First Amendment violation, this Court notes that the Supreme Court has created a balancing test that would allow Defendants to "escape liability by showing that [they] would have taken the same action even in the absence of the protected conduct."  Umbehr, 518 U.S. at 675.

members before they terminated him.  Umbehr, 518 U.S. at 685.  Speech will be characterized as

a matter of public concern if it relates to any matter of political, social, or other concern to the

community.  Connick, 461 U.S. at 147.  The court will consider the content, form, and context of

a given statement when determining the public concern of a given statement.  Id.  "The

fundamental question is whether the employee is seeking to vindicate personal interests or bring

to light a matter of political, social, or other concern to the community."  Cahill v. O'Donnell, 75

F. Supp. 2d 264, 272 (S.D.N.Y. 1999).  However, "[e]ven as to an issue that could arguably be

viewed as a matter of public concern, if the employee has raised the issue solely in order to

further his own employment interest, his First Amendment right to comment on that issue is

entitled to little weight."  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.

1993).  Once the protected speech has been identified, in order to establish a prima facie First

Amendment retaliation case, a plaintiff must also establish that the public speech was at least a

substantial or motivating factor in the adverse action taken by the employer.  Umbehr, 518 U.S.

at 675; Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

Given this framework, Nittoli has a right under the First Amendment to speak on matters

of public concern.  Umbehr, 518 U.S. at 685 (recognizing "the right of independent government

contractors not to be terminated for exercising their First Amendment rights").[12]  See also

Connick, 461 U.S. at 145 ("Government employees have a right under the First Amendment to

speak on matters of public concern.").  In light of the vagueness of Nittoli's allegations, it is

difficult for this Court to identify exactly what statements Nittoli alleges were protected by the

_____

[12]  As she acknowledges in the complaint, Nittoli was an independent contractor with the
Morris County Prosecutor's Office.  (Compl. ¶ 1.)

First Amendment.  However, it appears from reading the complaint broadly, and relying on the arguments in her brief, that Nittoli bases her First Amendment claim on her statement to Paul[13] that she had been subjected to sexual discrimination, including sexual harassment, by Devine and Kalleberg.  Apparently, Nittoli alleges that Devine's inquiry into her personal life, Kalleberg's accusation regarding a misrepresentation on her resume, and their combined refusal to process her and her staff's payroll until it was in the proper format constituted sexual harassment.  On September 5, 2003, she shared this opinion with Paul, both in a voice mail message and in a telephone conversation.  (Compl. ¶ 22.)

Nittoli argues that her statement to Paul is of public concern since it objected to sexually discriminating employment practices in the Morris County Prosecutor's Office.  (See, e.g., Pls. Karen Nittoli and Harry Seals's Brief in Opp'n to Def. Joseph Devine's Mot. for Partial Dismissal of the Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) at 30.)  However, the allegations in the complaint do not establish that Nittoli's statement to Paul was of such purpose, nor do the allegations demonstrate that Nittoli's speech was protected by the First Amendment.

When reviewing the content, form and context of her statement, Nittoli's telephone conversation with Paul regarding her belief that she had been subjected to sexual discrimination and sexual harassment does not rise to the level of public exposure and concern that requires First Amendment protection.  Her statement to Paul instead points to what appears to be a

---

[13]  It does not appear that Paul was Nittoli's supervisor at any time.  The complaint refers to Robert Magnusen as Nittoli's supervisor in September 2003 (Compl. ¶ 25), and Michelle Roers DiNapoli as the SART Coordinator after that time (Compl. ¶ 25).  According to her employment contract, Nittoli reported to the SART Coordinator.  (2003 Agreement for Purchase of Services Between Morris County Prosecutor's Office and Sexual Assault Nurse Examiner Program Coordinator ¶¶ 3.e, 5, 7 (attached as Exhibit B to the Certification of Michael Rubbinaccio).)

personal, internal, departmental dispute regarding her interactions with Devine and Kalleberg. That is, it was made to another individual in the office who was not Nittoli's supervisor, and it apparently was made "solely in order to further [her] own employment interest" or "to vindicate personal interests," rather than made in order to "bring to light a matter of political, social, or other concern to the community." Similarly, Nittoli's statement did not reflect any pattern of wide spread harassment or discrimination in the Morris County Prosecutor's Office; it simply noted three separate actions involving only her that she believed to be discriminatory. Thus, Nittoli's statements are not of public concern and were not protected under the First Amendment. As a result, Nittoli fails to state a claim, pursuant to § 1983, based on a violation of her First Amendment right to free speech.

The second factor that must be established in a First Amendment retaliation claim is that the public speech was a factor in the adverse employment actions suffered. However, this is a conjunctive test, and this Court has determined Nittoli's speech, as set forth in her complaint and as best interpreted by this Court, is not speech protected by the Constitution. If this Court were to address the second prong of the test, which it is not required to do, Nittoli's claim would nonetheless fail.

To establish the second prong of the prima facie case of First Amendment retaliation under § 1983, a plaintiff must demonstrate that their protected speech "was a substantial or motivating factor in the adverse action taken by the employer." Umbehr, 518 U.S. at 675; Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). In the instant case, Nittoli alleges that her removal as SART Coordinator is an adverse employment action. However, Nittoli makes no specific allegation that any of the defendants played any role in her removal from this

11

position.[14]  Rather, the complaint states that her then-current supervisor, Robert Magnusen, told

her she was being removed from the SART Coordinator position.  (Compl. ¶ 25.)  Nowhere does

Nittoli allege that any of the defendants supervised her or could influence her hiring or retention.

In fact, there is no allegation that her supervisor even knew of her statement to Paul, let alone

that her statement was a substantial or motivating factor in her termination.  Therefore, Nittoli

fails to satisfy the second prong of the test.

> **b.**     **Nittoli's Equal Protection Claim**

Nittoli alleges a violation of her right to equal protection as the next basis for her § 1983

claim.  In order to bring a successful claim under § 1983 for a denial of equal protection, a

"plaintiff must demonstrate that [she] received different treatment from that received by other

individuals similarly situated" and "prove the existence of purposeful discrimination."  Batson v.

Kentucky, 476 U.S. 79, 93 (1986); Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676 (3d Cir.

1990).  Nittoli fails to satisfy either of the elements necessary to have her equal protection claim

survive.

In the instant case, Nittoli does not make any allegations in her complaint that

demonstrate she received different treatment from other individuals similarly situated.

---

[14]  This Court could infer that Rubbinaccio, as the Morris County Prosecutor and signatory to Nittoli's employment contract, had authority over Nittoli.  However, there are no specific allegations in the complaint regarding the extent of that authority or the specific role Rubbinaccio played in Nittoli's termination.  The only references to Rubbinaccio in the complaint involved an allegation that Nittoli attempted to speak to him and "was informed that the Prosecutor had 'no intention of discussing these problems with her, and that if I she [sic] had any complaints she was to go through her chain of command first.'" (Compl. ¶ 19.)  This statement does not even indicate that it was Rubbinaccio who told Nittoli to follow her chain of command.  The other reference to Rubbinaccio involved an allegation that he and others left a meeting Nittoli was involved in early.  (Compl. ¶ 31.)

Significantly, in her complaint Nittoli does not identify an individual with whom she is similarly situated. She attempts to compare herself to DiNapoli, who is the SART Coordinator and Nittoli's supervisor. (Compl. ¶ 25). However, unlike Nittoli, who was an independent contractor, DiNapoli was an employee of the Morris County Prosecutor's Office. Given the significant differences in their circumstances and positions, this Court cannot find that Nittoli and DiNapoli are similarly situated. Simply being the only other woman mentioned in the complaint does not automatically make DiNapoli similarly situated to Nittoli. That is, they do not share like characteristics or classifications specific to their employment status.[15] Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000) (noting that the similarly situated requirement requires employees to demonstrate that they shared "common features essential to a meaningful comparison" to ensure that the employee who received the more favorable treatment was similarly situated).

Having failed to allege that she was being treated differently from similarly situated individuals, Nittoli fails to state a claim pursuant to § 1983 based on a violation of her equal protection rights.

---

[15]  The Seventh Circuit has noted that "[w]hile we have repeatedly discussed the similarly situated requirement in the context of employment discrimination cases, these discussions are rarely extensive and do not provide any magic formula for determining whether someone is similarly situated. This is due, seemingly, to the essentially factual nature of the inquiry. Different factors will be relevant for different types of inquiries – it would be imprudent to turn a common-sense inquiry into a complicated legal one. In determining who is similarly situated, we have also been careful not to define the requirement too narrowly." Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001). Lacking any clearer guidance from the Third Circuit on this point, this Court has applied the common-sense approach advocated by the Seventh Circuit in analyzing the facts here.

c.      **Due Process**[16]

The Fourteenth Amendment of the Constitution guarantees that a State shall not "deprive

any person of life, liberty, or property, without due process of the law."  U.S. Const. amend.

XIV.  Procedural due process rights, in the employment context, are divided into two categories:

property interest and liberty interest.  That is, in the context of public employment,  the

Fourteenth Amendment guarantees that a public employee may not be deprived by the State of

property or liberty without due process of law.  See Bd. of Regents of State Coll. v. Roth, 408

U.S. 564, 576-77 (1972).

"In order to succeed on a claim of deprivation of due process under the Fourteenth

Amendment with respect to termination of a specific employment position, a plaintiff must first

establish a property interest in the employment."  Latessa v. Jersey Racing Commission, 113

F.3d 1313, 1318 (3d Cir. 1997).  "To have a property interest in a job or job benefit, an employee

must have a legitimate claim of entitlement, not just a unilateral expectation."  Id.

"An employment action implicates a fourteenth amendment liberty interest only if it (1) is

based on a 'charge against [the individual] that might seriously damage his standing and

---

[16]  Due process rights, as guaranteed by the Fourteenth Amendment, are comprised of two areas, substantive and procedural due process.  Substantive due process requires legislation to be fair and reasonable in content and to further a legitimate governmental objective.  Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000); Black's Law Dictionary 1429 (6th ed. 1990). Procedural due process requires notice and a hearing to a party, especially in the occurrence of the deprivation of a significant life, liberty, or property interest.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); Black's Law Dictionary 1203 (6th ed. 1990).  Given the vagueness of Plaintiffs' allegations, this Court finds it difficult to determine whether Plaintiffs are claiming a violation of their substantive or procedural due process rights.  However, it appears from reading the complaint broadly, and relying on the arguments in their brief, that Plaintiffs base their due process claims on a deprivation of property interests in their continued employment.  Given this determination, this Court will address Nittoli's and Seals's due process claims as procedural.

14

associations in the community . . ., for example, that he had been guilty of dishonesty, or immorality' or (2) 'imposes on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities.'"   Robb v. Philadelphia, 733 F.2d 286, 293-294 (3d Cir. 1984) (quoting Roth, 408 U.S. at 573).  "Stigma to reputation alone, absent some accompanying deprivation of present[17] or future employment, is not a liberty interest protected by the fourteenth amendment."  Id.[18]

---

[17] While Robb references "present and future employment" with respect to infringement of an individual's liberty interest, that isolated phrase is the only reference to present employment this Court has identified.  All other Third Circuit cases discussing liberty interest in the employment context refer to only future employment.  See, e.g., McKnight v. SEPTA, 583 F.2d 1229, 1236 (3d Cir. 1978).

[18]  Neither Nittoli nor Seals adequately alleges a violation of a protected liberty interest. As to Seals, the complaint simply alleges that his being "escorted . . . off the premises, in plain view of other employees and individuals at the premises of defendants, [made] it appear as if Mr. Seals had done something wrong."  (Compl. ¶ 45.)  Simply being removed from the premises does not rise to the level of serious damage to his reputation or standing in the community, nor does it create a stigma of other disability foreclosing him from future employment.  Although slightly more specific, Nittoli's claim is similarly flawed. Nittoli alleges that Defendants attempted to interfere in her future employment with Hunterdon County by reporting that she had filed a notice of claim against Morris County.  (Compl. ¶ 34.)  Nittoli did not allege that this attempted interference prevented her from being hired; rather, it simply delayed her hiring. (Compl. ¶ 34.)  A delay does not rise to the level of a denial of employment, and this claim therefore fails.  See  Latessa, 113 F.3d at 1318 ("The liberty interest at issue is the right to 'pursue a calling or occupation, and not the right to a specific job.'"  (quoting Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994))).  Finally, Nittoli alleges that Defendants interfered with her employment at Saint Clare's Hospital in Denville, N.J. by "requesting that the hospital cease assigning Ms. Nittoli to any rape cases."  (Compl. ¶ 35.) However, by resigning as the Sexual Assault Nurse Examiner, Nittoli created her own inability to handle rape cases in Morris County.  See N.J. STAT. ANN. § 52:4B-54 (requiring each county prosecutor's office to establish a Sexual Assault Response Team (SART), that includes a Sexual Assault Nurse Examiner; one function of the SART is to provide treatment and forensic medical services to victims of sexual assault).

i.        **Property Interest – Nittoli**

Nittoli claims she was denied her due process rights set forth in the Fourteenth

Amendment of the Constitution.  This Court must undertake a two-step analysis in evaluating

claims for the violation of due process rights: (1) determining whether a property right does exist;

and (2) if a property right exists, determining what process is due.  See Gikas v. Wash. Sch. Dist.,

328 F.3d 731, 737 (3d Cir. 2003).

In order for a property interest in a job or job benefit to exist, an employee must have a

legitimate claim of entitlement to that job.  Latessa, 113 F.3d at 1318.  "The decisional law is

clear that an at-will employee does not have a legitimate entitlement to continued employment

because she serves solely at the pleasure of her employer.  Therefore, once a court determines

that a public employee 'held [her] position at the will and pleasure of the [governmental entity],'

such a finding 'necessarily establishes that [the employee] had no property interest' in the job

sufficient to trigger due process concerns."  Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)

(internal citation omitted) (quoting Bishop v. Wood, 426 U.S. 342, 346 n.8 (1976)).

"As an initial matter, state law determines whether such a property interest exists."  Id.

Nittoli's employment contract for the SANE Coordinator, for the time period of October

1, 2003 through September 30, 2004, states that the "Morris County Prosecutor may terminate

this agreement . . . in his sole discretion and with or without cause."  (2003 Agreement for

Purchase of Services Between Morris County Prosecutor's Office and Sexual Assault Nurse

Examiner Program Coordinator ¶ 9 (attached as Exhibit B to the Certification of Michael

Rubbinaccio).)  As the terms of her employment contract make clear, Nittoli was not entitled to

continued employment[19] since the contract could be terminated at any time with or without cause thus making her an at-will employee.[20]  Therefore, since Nittoli cannot demonstrate that she had a property interest or entitlement to her job, she has failed to state a claim, pursuant to § 1983, based on a due process violation.

ii.    **Property Interest – Seals**

Seals also claims that the termination of his employment violated his due process rights under the Fourteenth Amendment.  As previously stated, he must establish a property interest in his employment to succeed on a claim of deprivation of due process under the Fourteenth

---

[19]  Nittoli alleges that Devine and Kalleberg stated that her position as SANE/SART Coordinator was guaranteed for two more years, after the SANE/SART program received a positive audit from the State.  (Compl. ¶ 20.)  Construing this statement broadly, it is possible that Nittoli is attempting to allege that this oral representation converted her year-to-year, at-will employment to a guaranteed position.  Courts are reluctant to enforce oral promises because so often "what the promisee hears differs from the intent of the promisor."  Kruezburg v. Computer Services Div., 661 F. Supp. 877, 877 (D.N.J. 1987).  "The courts of New Jersey have enforced oral contracts only when there is clear and convincing evidence of the specific promise made and that promise encompassed all of the terms necessary to its enforcement."  Id.  In addition, courts have stated that when parties have reduced their agreement to writing, the writing will be the sole evidence of their agreement, and parol evidence may not be admitted to vary the terms of the contract in the absence of fraud, accident or mistake.  See 6-26 CORBIN ON CONTRACTS § 585.  In the instant case, it appears that Nittoli seeks to use Devine's and Kalleberg's statements to establish an interest in continued employment.  However, Nittoli has a current contract with the Morris County Prosecutor's Office detailing the necessary terms of her employment.  Nittoli's employment is governed by the terms in the four corners of the document.  In addition, Nittoli does not set forth sufficient information to establish the intent of Devine and Kalleberg, nor does she establish that their statements encompassed all of the terms necessary to its enforcement.

[20]  The doctrine of employment at will "provides that, absent express agreement to [the] contrary, either employer or employee may terminate their relationship at any time, for any reason."  Black's Law Dictionary 525 (6th ed. 1990).  "'In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.  An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise.'"  Wade v. Kessler Inst., 798 A.2d 1251, 1258 (N.J. 2002) (quoting Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994)).

Amendment with respect to termination of a specific employment position.  Latessa, 113 F.3d at

1318.  "The decisional law is clear that an at-will employee does not have a legitimate

entitlement to continued employment because she serves solely at the pleasure of her employer."

Elmore, 399 F.3d at  282.  In order for a property interest in a job or job benefit to exist, an

employee must have a legitimate claim of entitlement to that job, which, when dealing with

government employment, is generally created and defined by state law.  Latessa, 113 F.3d at

1318; Gikas v. Washington Sch. Dist., 328 F.3d 731, 738 n.4 (3d Cir. 2003).  The Supreme Court

of the United States held that a public employee with no statutory or contractual entitlement to

his employment has no property interest subject to protection of the Fourteenth Amendment.

Bishop v. Wood, 426 U.S. 341, 349-350 (1976).  "[S]tate law determines whether such a

property interest exists."  Elmore, 399 F.3d at 282.

     Seals did not provide an employment contract governing his employment with the Morris

County Prosecutor's Office in his complaint.  In the absence of Seals's employment contract

governing his employment as an agent in the Morris County Prosecutor's Office, this Court

reviewed statutory language[21] governing the employment in county prosecutors' offices in the

state of New Jersey.[22]  Pursuant to N.J. STAT. ANN. § 2A:157-10, a county investigator "shall be

---

     [21]  "To decide a motion to dismiss, courts generally consider only the allegations
contained in the complaint, exhibits attached to the complaint and *matters of public record.*"
Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc., 998 F.2d 1192, 1196 (3d
Cir.1993) (emphasis added).  Unarguably, state statutes are matters of public record.

     [22]  The Supreme Court of New Jersey notes that "'[t]he Legislature as well as the courts
have long recognized the strong policy considerations which dictate that since the county
prosecutor is charged with heavy enforcement responsibilities he must be given broad powers to
appoint his own personnel; thus he appoints his own assistant prosecutors and investigators
within the maxima prescribed by statute.'"  Golden v. County of Union, 749 A.2d 842, 846 (N.J.
2000) (quoting Cetrullo v. Byrne, 157 A.2d 297, 301 (N.J. 1960)).

in the unclassified service of civil service," which establishes an at-will employment status.  <u>See</u> <u>Battaglia</u>, 88 N.J. at 56-57.  "Under New Jersey law unclassified state workers are at-will employees who have no entitlement to continued public employment."  <u>Id.</u>  In the absence of a contract that contravenes the statutory authority, this Court concludes that Seals was an at-will employee.  As such, he does not have a legitimate entitlement to continued employment, and consequently, has no property interest in his employment.  <u>See</u> <u>Battaglia</u>, 88 N.J. at 56.  ("An employee hired at-will . . . may not prevail on a claim that the loss of employment constituted a deprivation of property.").  Therefore, Seals fails to state a claim for violation of his due process rights.

**d.    Seals's Claim of Denial of Freedom of Association**

Seals alleges that the termination of his employment violated his First Amendment right of freedom of association.  Although not explicitly stated in the First Amendment, Constitutional protection is extended to freedom of association.  <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 24 (1989);  <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 619-620 (1984).  The Supreme Court has recognized two types of freedom of association: (1)  "choices to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme;" and (2) "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion."  <u>Roberts</u>, 468 U.S. at 617-18.  <u>See</u> <u>also</u>  <u>Pi Lamda Phi</u> <u>Fraternity, Inc. v. Univ. of Pittsburgh</u>, 229 F.3d 435, 438 (3d Cir. 2000) ("Two types of association are protected by the federal Constitution: intimate association (i.e., certain close and

intimate human relationships like family relationships) and expressive association (i.e., association for the purpose of engaging in activities protected by the First Amendment).").[23]

The Supreme "Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." Roberts, 468 U.S. at 618. "Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty." Id. at 619. Therefore, an intimate association right is not violated unless the action in question "'directly and substantially' interfere[s] with family living arrangements." Lyng v. Int'l Union UAW, 485 U.S. 360, 365 (1988) (quoting Lyng v. Castillo, 477 U.S. 635, 638 (1986).)

Seals relies on Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999), to support his claim that his First Amendment right to freedom of association was violated. In Adler, the Second Circuit concluded that, while "the matter is not free from doubt, we think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." Adler, 185 F.3d at 44.

As an initial matter, a decision from the Second Circuit is not binding authority on this Court. While this Court could look to the Second Circuit for persuasive authority and guidance, it will not do so in this instance since it appears to this Court that in reaching the conclusion it

---

[23] Since there is no allegation in the complaint that Seals attempted to associate with Nittoli for the purpose of exercising their free speech rights, this Court concludes that Seals must be basing his freedom of association claim on his intimate association with his daughter, Nittoli.

did in Adler, the Second Circuit melded together the two types of freedom of association that the

Supreme Court has recognized.  That is, it appears that, without any evidence that the two

spouses were attempting to join together to exercise their First Amendment free speech rights,

the Second Circuit extended protection from the expressive type of freedom of association to the

intimate spousal relationship.  Neither the Supreme Court nor the Third Circuit has permitted this

melding of rights, and this Court is disinclined to do so in this case.[24]  Therefore, this Court will

analyze the present case simply as an alleged violation of an intimate association.

      This Court must determine whether Seals's and Nittoli's relationship falls within the

category of intimate relationship protected by the Constitution.  This question is relatively

straightforward and is answered in the affirmative.  The Constitution protects "highly personal

relationships" such as those that "attend the creation and sustenance of family."  Roberts, 468

U.S. 609, 619-620 (1984).  "Family relationships . . . involve deep attachments and commitments

to the necessary few other individuals with whom one shares . . . distinctly personal aspects of

one's life."  Id. at 620.  A father-daughter relationship is a personal relationship related to the

creation of a family.

      Seals's claim nonetheless fails since the complaint contains no allegation that the alleged

state action (i.e., his termination) somehow interfered with or placed an undue burden on his

intimate association with his daughter, Nittoli.  In order to demonstrate a violation of his right to

associate with his daughter, Seals must allege that his firing prevented him from, or at least

interfered with, continuing his relationship with his daughter.  See Lyng, 485 U.S. at 365.  He

---

[24] Even if this Court were inclined to adopt the Second Circuit's interpretation, Seals's
claim would be denied since there is no allegation in the complaint that Seals attempted to
engage in the same speech in which Nittoli allegedly engaged.

fails to do so.  As a result, he fails to state a claim, pursuant to § 1983, based on a violation of his

First Amendment right to freedom of association.

      **2.**        **Jurisdiction over state law claims**

      The remaining seventeen substantive claims in the complaint are all based on New Jersey

state law.  Jurisdiction over state law claims is provided by 28 U.S.C. § 1367(a), which states

that, with certain exceptions not relevant here, "in any civil action of which the district courts

have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution."

However, "district courts may decline to exercise supplemental jurisdiction over a claim under

subsection (a) if . . . (3) the district court has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c).  The Third Circuit has observed that "[t]he power to exercise

pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of

sufficient substance to confer subject matter jurisdiction on the court."  Tully v. Mott

Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) (citing United Mine Workers v. Gibbs, 383

U.S. 715, 725 (1966)).  Further, in cases where the federal claims are subject to dismissal under

FED. R. CIV. P. 12(b)(6), "the court should ordinarily refrain from exercising jurisdiction in the

absence of extraordinary circumstances."  Id.

      In the present case, all federal claims have been dismissed.  Further, plaintiffs have not

presented any exceptional circumstances that would remove this case from the general rule

requiring dismissal of the state law claims.  Specifically, the Third Circuit has observed that

"considerations of 'judicial economy, convenience, and fairness to the litigants' dictate that

pendent claims be entertained." Id.  None of those factors are present here.

Ordinarily, this Court would remand these state claims in the face of a dismissal of all of Plaintiffs' federal claims; however, given that this Court shall  grant Plaintiffs thirty days to file an amended complaint (if they so choose), Defendants' motions on the state law claims will be denied as moot.  In the event that Plaintiffs do not file an amended complaint within thirty days, the state law claims shall be remanded to Superior Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs fail to state a claim, pursuant to 42 U.S.C. § 1983, for which relief can be granted.  As a result, these claims will be dismissed.  This Court shall grant Plaintiffs thirty days to file an amended complaint, if they so choose.  Defendants' motions to dismiss the state law claims shall be denied as moot.  If Plaintiffs fail to file an amended complaint within thirty days, this Court will decline to assert supplemental jurisdiction over the remaining state law claims, and remand them to the Superior Court.


Date: July 24, 2006


                        S/Joseph A. Greenaway, Jr.                    
                       JOSEPH A. GREENAWAY, JR., U.S.D.J.