NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KAREN NITTOLI and HARRY SEALS, | : | |
| Plaintiffs, | : | |
|  | : | Civil Action No. 05-4007 (JAG) |
| v. | : | |
|  | : | **OPINION** |
| MORRIS COUNTY BOARD OF CHOSEN FREEHOLDERS; and in their official and individual capacities, JOSEPH DEVINE; PAUL KALLEBERG; JEFFREY PAUL; and MICHAEL RUBBINACCIO, | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motions of defendants Morris County Board of Chosen Freeholders ("Morris County Freeholders"); Joseph Devine ("Devine"), Chief of Investigations[1] in the Morris County Prosecutor's Office (Am. Compl. ¶ 4); Paul Kalleberg[2] ("Kalleberg"), a police captain and Deputy Chief of Investigations in the Morris County Prosecutor's Office (Am. Compl. ¶ 5); Jeffrey Paul ("Paul"), a police lieutenant in the Morris County Prosecutor's Office (Am. Compl. ¶ 6); and Michael Rubbinaccio ("Rubbinaccio"), the

---

[1] Devine is also, confusingly, referred to once in the Amended Complaint as the Deputy Chief of Investigations. (Am. Compl. ¶ 4.) This is likely a typographical error by Plaintiffs, and does not affect this Court's analysis.

[2] Kalleberg did not file a separate motion to dismiss. He joined in the motions to dismiss filed by Morris County Freeholders, Devine, and Michael Rubbinaccio.

1

Morris County Prosecutor (Am. Compl. ¶ 7) (collectively, "Defendants"), to dismiss the complaint of plaintiffs Karen Nittoli ("Nittoli") and her father, Harry Seals ("Seals") (collectively, "Plaintiffs"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  For the reasons set forth below, this Court concludes that Plaintiffs have failed to state a claim, pursuant to 42 U.S.C. § 1983, and those counts pertaining to section 1983 – counts ten and seventeen – shall be dismissed accordingly.  Plaintiffs' remaining claims are based on state law causes of action, which will be remanded to the New Jersey Superior Court.  This Court shall deny, as moot, Defendants' motions regarding the state law claims, based on this Court's lack of jurisdiction over those claims.

## BACKGROUND

Nittoli, a resident of New Jersey, alleges that, beginning in March of 2001, she was employed as the Sexual Assault Nurse Examiner ("SANE") Coordinator and Sexual Assault Response Team ("SART") Coordinator for Morris County.  (Am. Compl. ¶¶ 1, 9.)  However, Nittoli entered into a contract for the position of SANE Coordinator only; she had no contract for the position of SART Coordinator.  (Am. Compl. ¶ 20.) She worked for several months without pay while waiting for her employment application to be processed, and was hired officially as an independent contractor in May of 2001.  (Am. Compl. ¶ 11.)

Nittoli alleges that she was terminated from the SART Coordinator position on September 30, 2003, and replaced by Michelle Roers DiNapoli ("DiNapoli").  (Am. Compl. ¶ 45.)  Nittoli continued to serve as SANE Coordinator for some time after her alleged removal as SART Coordinator.  (Am. Compl. ¶ 47.)  She subsequently resigned as SANE Coordinator, effective January 1, 2004.  (Am. Compl. ¶ 54.)

Nittoli alleges that her resignation was not voluntary; she contends that she was constructively discharged due to unlawful and unreasonable conduct on the part of Defendants. (Am. Compl. ¶ 54.) She alleges that, beginning in 2003 and continuing through July of 2004, she was subjected to "disparate treatment on the basis of her sex, sexual harassment, a hostile work environment, and retaliation for objecting to discrimination and otherwise asserting her civil rights." (Am. Compl. ¶ 21.) Specifically, Nittoli alleges that Devine "interrogated" her regarding her personal life and professional abilities on June 30, 2003 (Am. Compl. ¶¶ 22, 23); Kalleberg falsely accused her of misrepresenting her education on her resume (Am. Compl. ¶ 25); she and her staff were not paid in a timely fashion (Am. Compl. ¶ 26); and Kalleberg, Devine, and Paul each informed her that she and her staff would not be paid until their payroll paperwork was submitted properly (Am. Compl. ¶¶ 33, 37, 40).

On Friday, September 5, 2003, at approximately 3:30 p.m., Nittoli informed Paul that she and her staff had not been paid, and stated that she had been subjected to sexual harassment by Kalleberg and Devine. (Am. Compl. ¶ 42.) Forty-five minutes after Nittoli spoke to Paul, Seals[3] was told by Lieutenant Kevin Loughman that Devine wanted to speak with him the following Monday morning. (Am. Compl. ¶ 43.) That Monday, September 8, 2003, Seals was terminated from his position as an Agent in the Morris County Prosecutor's Office, and escorted out of the building. (Am. Compl. ¶ 44.) Downsizing was the stated reason for his dismissal.[4] (Am. Compl. ¶ 44.)

---

[3] Plaintiff Harry Seals, Nittoli's father, also a New Jersey resident, is a retired Hanover Township police detective, and was employed as an Agent in the Morris County Prosecutor's Office. (Am. Compl. ¶ 2.)

[4] The remaining specific allegations will be discussed in detail as they become relevant to this Court's analysis.

In the Amended Complaint, Nittoli and Seals allege multiple counts of discrimination and wrongful termination against defendants Morris County Freeholders, Devine, Kalleberg, Paul, and Rubbinaccio. Plaintiffs also allege several constitutional violations by Devine, Kalleberg, Paul, and Rubbinaccio. Counts ten and seventeen of the Complaint allege violations of the constitutionally guaranteed rights to free speech, due process, equal protection, and intimate association. Section 1983 creates causes of action for these violations, which are the sole bases of federal jurisdiction in this case. All counts in the Complaint except the above-stated section 1983 claims are state law causes of action.[5]

All defendants move to dismiss all counts against them,[6] pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted. This Court concludes that Plaintiffs have not alleged facts sufficient to support any section 1983 claim. Accordingly, this

---

[5] Nittoli's and Seals's counts are combined in the same complaint for a total of nineteen counts. The first thirteen counts pertain to Nittoli; the remaining six counts pertain to Seals. The counts specific to Nittoli are: (First Count) hostile work environment based on sex, marital status and familial status, in violation of N.J. STAT. ANN. §§ 10:51-1 through 42, New Jersey Law Against Discrimination ("LAD"); (Second Count) disparate treatment based upon sex, marital status and familial status, in violation of LAD; (Third Count) failure to contract, in violation of LAD; (Fourth Count) retaliation, in violation of LAD; (Fifth Count) aiding, abetting, inciting, compelling and/or coercing, in violation of LAD; (Sixth Count) fraudulent inducement; (Seventh Count) breach of contract; (Eighth Count) breach of good faith and fair dealing; (Ninth Count) violation of public policy; (Tenth Count) section 1983 violations; (Eleventh Count) intentional infliction of emotional distress; (Twelfth Count) intentional interference with prospective economic advantage; and (Thirteenth Count) violation of N.J. STAT. ANN. § 34:11-4.1, New Jersey Wage and Hour Law. The counts specific to Seals are: (Fourteenth Count) retaliation, in violation of LAD; (Fifteenth Count) discrimination based upon age, in violation of LAD; (Sixteenth Count) aiding, abetting, inciting, compelling and/or coercing, in violation of LAD; (Seventeenth Count) section 1983 violations; (Eighteenth Count) intentional interference with prospective economic advantage; and (Nineteenth Count) intentional infliction of emotional distress.

[6] Plaintiffs did not bring counts three, six, seven, eight, or thirteen against Devine, Kalleberg, Paul, or Rubbinaccio; Plaintiffs did not bring counts ten or seventeen against Morris County Freeholders.

Court shall dismiss counts ten and seventeen, pursuant to FED. R. CIV. P. 12(b)(6), and deny Defendants' motions to dismiss the remaining state law claims as moot.[7]

## DISCUSSION

### A.  Standard of Review Pursuant to FED. R. CIV. P. 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether he or she will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 340 (2d ed. 1990)).  The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998).

---

[7] This Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**B.** **Standard of Review Pursuant to 42 U.S.C. § 1983**

Section 1983 authorizes a person to seek redress for a violation of his or her federal rights by a person acting under color of state law, but does not create any new substantive rights; rather, section 1983 provides a remedy for the violation of rights already created by federal law. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 provides in relevant part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the other party injured in the action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Accordingly, in order to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he or she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the challenged conduct was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.J. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

**C.** **Analysis**

Two of the nineteen counts in Plaintiffs' complaint address alleged violations of section 1983, and provide the jurisdictional predicate for Plaintiffs' case to be in federal court. In count ten, Nittoli alleges violations of (1) her First Amendment right to free speech; (2) her right to due process; and (3) her right to equal protection. In count seventeen, Seals alleges a violation of his First Amendment right to intimate association. Neither Nittoli nor Seals allege facts sufficient to support their section 1983 claims because neither has alleged facts sufficient to demonstrate any

underlying constitutional violation.

### 1. Plaintiffs' Claims

#### a. Nittoli's First Amendment Claim

Nittoli claims that Devine, Kalleberg, Paul, and Rubbinaccio, acting under color of state law, denied her First Amendment right to free speech. (Am. Compl. ¶ 96.) Specifically, Nittoli claims that the aforementioned defendants chilled her speech and retaliated against her as a result of objections she made regarding matters of public concern, including (1) sexually discriminatory practices on the part of the Morris County Prosecutor's Office; (2) the failure of the Morris County Prosecutor's Office to employ her as an employee, rather than an independent contractor; and (3) the failure of the Morris County Prosecutor's Office to pay the SANE/SART staff on a timely basis. (Am. Compl. ¶ 96.)

In order to prevail on a First Amendment retaliation claim, a plaintiff must prove (1) that the conduct at issue was constitutionally protected, and (2) that it was a substantial or motivating factor for the alleged retaliatory conduct. Baldassare v. State of N.J., 250 F.3d 188, 194-95 (3d Cir. 2001). See Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996); Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).[8] On the facts alleged, Nittoli does not demonstrate either.

Speech, in the context of public employment, is constitutionally protected if it involves a matter of public concern. See, e.g., Garcetti v. Ceballos, 126 S.Ct. 1951, 1957 (2006); U.S. v. National Treasury Employees Union, 513 U.S. 454, 466 (1995). Speech involves a matter of

---

[8] In the case that a plaintiff satisfies these requirements, a defendant may escape liability by demonstrating that the adverse action would have been undertaken even in the absence of the protected conduct. Baldassare, 250 F.3d at 195. See Umbehr, 518 U.S. at 675; Hill, 411 F.3d at 125.

public concern if it relates to any matter of political, social, or other concern to the community. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). See Connick v. Myers, 461 U.S. 138, 146 (1983). Therefore, Nittoli's speech would have been constitutionally protected only if it related to a matter of political, social, or other concern to the community. No instance of speech cited by Nittoli related to any such concern.

Whether "speech can be fairly characterized as relating to any matter of political, social, or other concern to the community is determined by its 'content, form and context.'" Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1997) (quoting Connick v. Meyers, 461 U.S. 138, 147-48 (1983)). In the employment context, the most important consideration is whether the employee's speech was aimed at advancing a personal interest. See McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005); Cahill v. O'Donnell, 75 F. Supp. 2d 264, 272 (S.D.N.Y. 1999) ("The fundamental question is whether the employee is seeking to vindicate a personal interest."). If so, it was a matter of private, not public concern.

In the case at hand, Nittoli did not attempt to bring to light systematic sexual discrimination by the Morris County Prosecutor's Office. Rather, she objected to individual treatment at the hands of certain individuals,[9] namely Devine and Kalleberg. (Am. Compl. ¶¶ 22, 25, 42.). This is a matter of private, rather than public, concern, and, therefore, does not rise to the level of constitutionally protected speech. Nittoli's objections regarding her status as a

---

[9] Nittoli states that her complaints brought to attention sexually discriminatory practices within the Morris County Prosecutor's Office, but her allegations do not support this. She alleges disparate treatment of sexual assault nurse examiners, as well as a sexually hostile work environment toward women (Am. Compl. ¶ 96), but cites no example of either – only hostile treatment on an individual level by Devine and Kalleberg toward her (Am. Compl. ¶¶ 22, 25, 42).

contract employee and the timeliness of SANE/SART paychecks[10] (Am. Compl. ¶ 96), are also private, not public, concerns. Nittoli spoke on these matters in her capacity as an employee, not as a citizen bringing a matter of far-reaching concern to the public's attention.[11]

Assuming, arguendo, that Nittoli's objections did rise to the level of protected speech, her claim still fails, because she has not alleged any retaliatory conduct against her for which the speech could have been a substantial or motivating factor. The only possible retaliatory actions were: (1) removing her from the SART Coordinator position (Am. Compl. ¶ 47), and (2) delaying her paychecks (Am. Compl. ¶ 26). These actions were not retaliatory, because Nittoli never entered into a contract for the SART Coordinator position (Am. Compl. ¶ 20), and, therefore, was never employed as SART Coordinator, and the paychecks were delayed before she

---

[10] Nittoli's explicit claim is that the late paychecks were a violation of applicable wage and hour laws (Am. Compl. ¶ 96), and that her objection to their tardiness was, therefore, a matter of public concern. As noted in the discussion, however, it was not. Nittoli also hints that the late paychecks were the result of discriminatory practices by the Morris County Prosecutor's Office (Am. Compl. ¶¶ 26, 96), thus bolstering her claim that her objections were matters of public concern. However, Nittoli states in the complaint that the paychecks were withheld due to Nittoli's improperly submitted paperwork. (Am. Compl. ¶¶ 33, 40.) Nittoli alleges no facts to the contrary, and, as a result, cannot use delayed payment to support her assertion that the late paychecks were the result of discrimination by the Morris County Prosecutor's Office. Further, Nittoli makes no allegation that the female employees were paid in a manner different from the male employees.

[11] Nittoli argues that Holder, 987 F.2d 188, and Baldassare, 250 F.3d 188, support her claim that her speech involved matters of public concern. In both cases, an instance of speech was held to be a matter of public concern because it was speech aimed at exposing wrongdoing on the part of a government official. Nittoli argues that her objections, likewise, were aimed at exposing wrongdoing on the part of government officials. Holder and Baldassare are distinguishable, however. Holder involved an employee who wrote a letter to the editor criticizing the city's residency requirement for city employees. Holder, 987 F.2d 188. Baldassare involved an individual who participated in an official investigation of several law enforcement officers. Baldassare, 250 F.3d 188. Both cases involved a plaintiff who was working to expose wrongdoing on the part of public officials to the public at large, acting as a citizen, rather than an employee bringing individual concerns to the attention of her superiors, as Nittoli acted.

9

made her complaints – one of her complaints was <u>about</u> the paycheck delay.

Because none of the complaints or objections cited by Nittoli amounts to constitutionally protected speech, and because she has alleged no act of retaliation in response to the speech, she has not alleged facts sufficient to support a section 1983 claim for violation of her First Amendment right to free speech.

   **b.**  **Nittoli's Equal Protection Claim**

Nittoli argues that defendants Devine, Kalleberg, Paul, and Rubbinaccio denied her right to equal protection by classifying her as an independent contractor and applying different standards to her than to other SANE Coordinators and SART Coordinators. (Am. Compl. ¶ 98.)

In order for Nittoli to succeed on a section 1983 claim for denial of equal protection, she must demonstrate that she received different treatment from that received by other similarly situated individuals, and that this discrimination was purposeful. <u>Shuman ex rel. Shertzer v. Penn Manor School Dist.</u>, 422 F.3d 141, 151 (3d Cir. 2005); <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1478 (3d. Cir. 1990). Nittoli does not allege facts sufficient to satisfy either of these requirements.

Nittoli alleges no facts that support her claim that she received treatment different from that received by other similarly situated individuals. She compares herself to DiNapoli and SART Coordinators in other counties, arguing that she was wrongly classified as an independent contractor, while DiNapoli and others were not. (Am. Compl. ¶ 98.) Nittoli and DiNapoli are not similarly situated, however; nor are Nittoli and any other SART Coordinator. On the facts alleged, Nittoli was never employed as SART Coordinator. She had no contract for the position (Am. Compl. ¶ 20), and she makes no allegation that she was ever paid to perform the duties of a

SART Coordinator; she merely states that she assumed the SART Coordinator's duties in addition to her SANE Coordinator duties (Am. Compl. ¶ 20). Nittoli, therefore, cannot base a successful equal protection claim upon a comparison of herself to DiNapoli, who was, in fact, the SART Coordinator, or any other SART Coordinator.

Nittoli also asserts that she was treated differently than SANE Coordinators in other counties. (Am. Compl. ¶ 98.) This is not a meaningful comparison for the purposes of a due process claim, however, because Nittoli and SANE Coordinators in other counties are not similarly situated individuals.[12] This is made obvious by the fact that Nittoli and SANE Coordinators in other counties were not employed by the same employer.[13]

Based on these facts, it is impossible to conclude, based on the facts alleged, that Nittoli was treated differently than any other similarly situated SANE Coordinator, because there were none.[14] Because Nittoli has not alleged facts demonstrating that she received treatment different from that received by any similarly situated individual, her claim under section 1983 for a

---

[12] There is no clear guidance from the Third Circuit concerning what constitutes a similarly situated individual within the context of employment. This court will adopt a common-sense approach, a method to which the Seventh Circuit is a steadfast adherent. See Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001) (noting that there is no "magic formula for determining whether someone is similarly situated" in the context of employment, and that "it would be imprudent to turn a common-sense inquiry into a complicated legal one"); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000) (providing only that employees must share "common features essential to a meaningful comparison" to be considered similarly situated).

[13] Nittoli was employed by Morris County as its SANE Coordinator. (Am. Compl. ¶ 8.) She was Morris County's only SANE Coordinator (Am. Compl. ¶ 8); each county appoints only one SANE Coordinator, see N.J. STAT. ANN. § 52:4B-51.

[14] This Court agrees with the Eighth Circuit that employees of different employers are not similarly situated for the purposes of equal protection in the context of employment. See Carter v. Arkansas, 392 F.3d 965, 968-69 (8th Cir. 2004).

11

violation of her right to equal protection cannot be upheld.[15]

      c.      **Nittoli's Due Process Claim**[16]

Nittoli also alleges that Defendants violated her right to due process by removing her from her position as SART Coordinator. (Am. Compl. ¶ 97.) This is her final basis for a section 1983 claim.

The Fourteenth Amendment guarantees that a public employee may not be deprived by the State of property or liberty without due process of law. See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 576-77 (1972). "An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously

---

[15] Even if the facts alleged could support the claim that Nittoli was treated differently than some similarly situated individual, they cannot support the claim that any difference in treatment was the result of purposeful discrimination. The only specific difference in treatment that Nittoli cites is that she was classified as an independent contractor. (Am. Compl. ¶ 98.) However, New Jersey state law required that Nittoli be hired as an independent contractor, rather than as an employee. See N.J. STAT. ANN. § 52:4B-51(b) (stipulating that employees of a licensed health care facility or a county rape care program who are hired to serve as SANE Coordinators "shall not be deemed [employees] of the county prosecutor's office"). Nittoli was an employee of the Morristown Memorial Hospital (Am. Compl. ¶ 22) who was hired to serve as SANE Coordinator, and, therefore, could not be classified as an employee of the Morris County Prosecutor's Office. See N.J. STAT. ANN. § 52:4B-51(b). Nittoli was not discriminated against in regard to her employment status, and, as a result, cannot satisfy the "purposeful discrimination" prong of the equal protection test.

[16] Due process, as guaranteed by the Fourteenth Amendment, is comprised of two areas: substantive due process and procedural due process. Substantive due process requires legislation to be fair and reasonable in content, and to further a legitimate government objective. Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000). Procedural due process protects against the deprivation of life, liberty, or property in the face of insufficient state procedures. Id. at 138-39. Given the vagueness of Nittoli's allegations, this Court finds it difficult to determine whether she is claiming a violation of her substantive due process rights or a violation of her procedural due process rights. However, it appears, from a broad reading of the Complaint, and from the arguments in her briefs, that Nittoli bases her due process claim on the deprivation of a property interest in her continued employment. This Court will therefore address Nittoli's due process claim as procedural.

12

damage [her] standing and associations in the community . . . for example, that [she] had been guilty of dishonesty, or immorality' or (2) 'imposes on [her] a stigma of other disability that forecloses [her] freedom to take advantage of other employment opportunities.'" Robb v. Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 573 (1972)). The actions alleged by Nittoli do not implicate a liberty interest;[17] as a result, this Court will analyze Nittoli's claim as a claim of deprivation of a property interest.

In light of the foregoing, this Court must carry out a two-step analysis in order to evaluate Nittoli's claim of violation of due process: (1) determine whether a property right exists; and (2) if a property right exists, determine what process is due. See Gikas v. Wash. Sch. Dist., 328 F.3d 731, 737 (3d Cir. 2003).

"In order to succeed on a claim of deprivation of due process under the Fourteenth Amendment with respect to termination of a specific employment position, a plaintiff must first establish a property interest in the employment." Latessa v. Jersey Racing Commission, 113 F.3d 1313, 1318 (3d Cir. 1997). "To have a property interest in a job or job benefit, an employee

---

[17] Nittoli does not adequately allege any violation of a protected liberty interest. She claims that Defendants attempted to interfere with her future employment with Hunterdon County by reporting that she had filed a notice of claim against Morris County. (Am. Compl. ¶ 57.) Nittoli does not allege that this attempted interference prevented her from being hired, only that it caused a delay. (Am. Compl. ¶ 57.) A delay does not rise to the level of a denial of employment, see Latessa v. Jersey Racing Commission, 113 F.3d 1313, 1318 (3d Cir. 1997) ("'The libery interest at issue is the right to 'pursue a calling or occupation, and not the right to a specific job.'" (quoting Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994))), and therefore this delay cannot support a claim of a violation of a liberty interest. Nittoli also alleges that Defendants interfered with her employment at Saint Clare's Hospital in Denville, N.J. by "requesting that the hospital cease assigning Ms. Nittoli to any rape cases." (Am. Compl. ¶ 58.) By resigning as the Sexual Assault Nurse Examiner, Nittoli brought about her own inability to handle rape cases in Morris County. See N.J. STAT. ANN. § 52:4B-54 (requiring each county prosecutor's office to establish a Sexual Assault Response Team that includes a Sexual Assault Nurse Examiner; one function of the Sexual Assault Response Team is to provide treatment and forensic medical services to victims of sexual assault).

must have a legitimate claim of entitlement, not just a unilateral expectation." Id. "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer.  Therefore, once a court determines that a public employee 'held [her] position at the will and pleasure of the [governmental entity],' such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (internal citation omitted) (quoting Bishop v. Wood, 426 U.S. 342, 346 n.8 (1976)).

Nittoli's employment contract for the position of SANE Coordinator, in effect from October 1, 2003 through September 30, 2004, states that the "Morris County Prosecutor may terminate this agreement . . . in his sole discretion with or without cause." (2003 Agreement for Purchase of Services Between Morris County Prosecutor's Office and Sexual Assault Nurse Examiner Program Coordinator ¶ 9 (attached as Exhibit B to the Certification of Michael Rubbinaccio).)  The terms make it clear that Nittoli was an at-will employee[18] and did not have a legitimate entitlement to continued employment as the SANE Coordinator.[19]  Thus, it is

---

[18] "'In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.  An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise.'" Wade v. Kessler Inst., 798 A.2d 1251, 1258 (N.J. 2002) (quoting Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994)).

[19] Nittoli alleges that Devine and Kalleberg stated that her position as SANE Coordinator was guaranteed for two more years after the SANE program received a positive audit from the State. (Am. Compl. ¶ 38.)  It is possible that Nittoli means to allege that this oral representation converted her year-to-year, at-will employment into a guaranteed position.  Courts are reluctant to enforce oral promises, however, because so often "what the promisee hears differs from the intent of the promisor." Kruezburg v. Computer Services Div., 661 F. Supp. 877 (D.N.J. 1987).  "The courts of New Jersey have enforced oral contracts only when there is clear and convincing evidence of the specific promise made and that promise encompassed all of the terms necessary

impossible for Nittoli to allege facts sufficient to demonstrate that she had a property interest in, or an entitlement to, that position.

Further, Nittoli's claim is not that she was deprived of a property right when she was terminated from her position as <u>SANE</u> Coordinator, a position from which she was never terminated.[20] Her claim is that she was deprived of a property right when she was terminated from her position as <u>SART</u> Coordinator (Am. Compl. ¶ 97), a position which she never held. (Am. Compl. ¶ 20.) This Court is not required to, and does not, accept Nittoli's bald assertion that she held the position of SART Coordinator,[21] and, therefore, concludes that she had no legitimate entitlement to the position.

Because Nittoli has not alleged facts sufficient to support the claim that she had a

---

to its enforcement." <u>Id.</u> In addition, courts have stated that when parties have reduced their agreement to writing, the writing will be the sole evidence of their agreement, and parol evidence may not be admitted to vary the terms of the contract in the absence of fraud, accident or mistake. <u>See</u> 6-26 CORBIN ON CONTRACTS § 585. In the instant case, it appears that Nittoli seeks to use Devine's and Kalleberg's statements to establish an interest in continued employment. Nittoli, however, had a valid written employment contract with the Morris County Prosecutor's Office, detailing the necessary terms of her employment. Nittoli's employment is governed by the terms within the four corners of the document. In addition, Nittoli does not set forth sufficient information to establish the intent of Devine and Kalleberg, nor does she establish that their statements encompassed all of the terms necessary to their enforcement. Further, it is not clear that Devine or Kalleberg had the authority to make such an offer regarding employment.

[20] Nittoli affirms in her complaint that she resigned from her position as SANE Coordinator. (Am. Compl. ¶ 54.)

[21] This Court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, <u>see</u> <u>Warfarin Sodium</u>, 214 F.3d at 397-98, but it need not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations, <u>Morse</u>, 132 F.3d at 906, especially when faced with documents to the contrary. This court does not accept Nittoli's assertion that she held the position of SART Coordinator (Am. Compl. ¶ 97). She alleges no facts to support this claim, and, in fact, states precisely the contrary – that she had no contract for that position (Am. Compl. ¶ 20).

15

property interest in, or entitlement to, the position of SANE Coordinator or SART Coordinator, she has failed to state a claim, pursuant to section 1983, on the basis of a due process violation.

   d. **Seals's Intimate Association Claim**

Seals alleges that the termination of his employment was a violation of his constitutional right to intimate association.  (Am. Compl. ¶¶ 123-125.)  The Supreme Court has recognized two types of protected association: (1) "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion;" and (2) "choices to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."  Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984).  See also Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 438 (3d Cir. 2000) ("Two types of association are protected by the federal Constitution: intimate association (i.e., certain close and intimate human relationships like family relationships) and expressive association (i.e., assocation for the purpose of engaging in activities protected by the First Amendment).").

Seals does not allege a violation of his right to associate for the purposes of engaging in activities protected by the First Amendment, so this Court will analyze his claim as an intimate relationship claim.  Accordingly, this Court must determine whether Seals's and Nittoli's relationship falls within the category of intimate relationships protected by the Constitution.  This question is relatively straightforward, and is answered in the affirmative.  The Constitution protects "highly personal relationships," such as those that "attend the creation and sustenance of family" or concern "cohabitation with one's relatives."  Roberts, 468 U.S. at 619.  A father-

daughter relationship is just such a relationship.

Seals's claim fails nonetheless, because the Complaint contains no allegation to support the claim that his termination somehow interfered with, or placed an undue burden on, his intimate association with his daughter.[22] In order to demonstrate a violation of his right to associate with his daughter, Seals must allege that his firing prevented him from, or at least interfered with, continuing his relationship with her.[23] See Lyng v. International Union, et. al., 485 U.S. 360, 365 (1988). He has not done so, and, as a result, he has failed to state a claim, pursuant to section 1983, based on a violation of his right to intimate association.

### 2. Jurisdiction Over State Law Claims

The remaining seventeen substantive claims in the Complaint are all based upon New Jersey state law. Jurisdiction over state law claims is provided for by 28 U.S.C. § 1367, which states that, with certain exceptions not relevant to this case, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction

---

[22] Seals alleges that his termination caused him and Nittoli emotional distress (Am. Compl. ¶ 69), but emotional distress does not rise to the level of interference which constitutes an intrusion upon his right to create and sustain a family, live with his relatives, or engage in similarly intimate and essential activities, see Roberts, 468 U.S. at 619.

[23] Seals cites Sutton v. Village of Valley Stream, 96 F. Supp. 2d 189 (E.D.N.Y. 2000), and Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999), as support for the proposition that alleging a retaliatory discharge based on a relative's exercise of his or her First Amendment rights is sufficent to show interference with one's right to maintain an intimate familial relationship. As an initial matter, decisions from the Eastern District of New York and the Second Circuit are not binding authority on this Court. While this Court may look to these decisions for guidance, and as persuasive authority, it will not do so in this instance, since it appears to this Court that the courts in Sutton and Adler conflate the two types of protected association that have been recognized by the Supreme Court, extending the protection for association in regard to expression to intimate relationships in which the claimant did not actually engage in any form of protected expression. Neither the Supreme Court nor the Third Circuit has recognized this conflation and extension, and this Court is disinclined to do so in this case.

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

The Third Circuit has observed that "[t]he power to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court." Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Further, in cases where the federal claims are subject to dismissal under FED. R. CIV. P. 12(b)(6), "the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." Id.

In the present case, all federal claims shall be dismissed, and Plaintiffs have not demonstrated any exceptional circumstance, in light of "considerations of 'judicial economy, convenience, and fairness to the litigants,'" id., meriting an exercise of jurisdiction by this Court in defiance of the general rule requiring remand of the remaining state law claims. Accordingly, this Court shall not exercise jurisdiction over those claims.

## **CONCLUSION**

For the reasons set forth above, this court finds that Nittoli has not alleged facts sufficient to support her claims of violations of the right to free speech, due process, or equal protection; and Seals has not alleged facts sufficient to support his claim of a violation of his right to intimate association. Plaintiffs have failed to state any claim, pursuant to 42 U.S.C. § 1983, upon

18

which relief can be granted.  As a result, this Court shall grant Defendants' motions to dismiss Plaintiffs' complaint, pursuant to FED. R. CIV. P. 12(b)(6), with respect to counts ten and seventeen.  Because this Court declines to exercise supplemental jurisdiction over the remaining state claims, this Court shall deny, as moot, Defendants' motions to dismiss Plaintiffs' complaint with respect to those claims, and shall remand them to the New Jersey Superior Court.

Date: May 21, 2007

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.